IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| In re: | ) | Case No. 12-04100-dd |
| Scott Anthony Rabon, aka | ) | Chapter 7 |
| Scott A. Rabon, and | ) | Adv. Pro. No. _____ |
| Lee Michelle Rabon, aka | ) | |
| L. Michelle Devlin-Rabon | ) | |
| _____ | ) | |
| | ) | |
| CBC National Bank, | ) | |
| | ) | **ADVERSARY COMPLAINT** |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Scott A. Rabon and | ) | |
| L. Michelle Devlin-Rabon, | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

CBC National Bank ("CBC") alleges and would show the following:

### JURISDICTIONAL MATTERS

1. CBC is a national bank doing business in South Carolina.

2. CBC formerly did business in the name Lowcountry National Bank ("Lowcountry"), and CBC is the successor to First National Bank of Nassau County by virtue of merger of First National Bank of Nassau County with CBC.

3. CBC is a creditor of debtors Scott A. Rabon and L. Michelle Devlin-Rabon (collectively, the "Debtors") and has filed the following claims in their pending bankruptcy case:

Claim No. 7 for $143,902.61

Claim No. 9 for $719,192.79

Claim No. 10 for $48,392.31

4. This court has jurisdiction over the matters alleged herein and over this proceeding pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 523. This is a core proceeding pursuant to 28 U.S.C. § 157.

1

5.    Venue is proper under 28 U.S.C. § 1409 in that the Debtors' case filed under Chapter 7 of the Bankruptcy Code is pending in this District.

6.    This court has personal jurisdiction over the Debtors pursuant to Rule 7004(f) as the Debtors voluntarily filed their bankruptcy petition in this court.

## FOR A FIRST CAUSE OF ACTION
## [11 U.S.C. § 523(a)(2)(A)]

7.    On January 16, 2003, in order to induce Lowcountry (now CBC) to make a $234,000 loan to Debtors, Scott A. Rabon, individually and as an owner and member of RABCO, LLC, and L. Michelle Devlin-Rabon, as an owner and member of RABCO, LLC, made, executed and delivered to Lowcountry a Real Estate Mortgage, whereby they mortgaged to Lowcountry the real estate described therein (the "Mortgage").

8.    The Mortgage was recorded January 17, 2003, in Book 1698, page 1379, Office of the Register of Deeds for Beaufort County, S.C., and a copy is Attachment A to the Complaint.

9.    The Mortgage is a written instrument and a statement of the Debtors in writing by which the Debtors affirmatively stated that "... Mortgagor is lawfully seized of the estate conveyed by this Mortgage and has the right to grant, bargain, convey, sell and mortgage the Property and warrants that the Property is unencumbered, except for encumbrances of record."

10.    That statement was materially false when made because the Debtors through their wholly owned company, the mortgagor RABCO, LLC, had previously sold a part of the property under an unrecorded bond for title and had been paid a substantial part of the sale price.

11.    Not only did the Debtors make the false statement in writing, as alleged above, upon information and belief, they failed to disclose to the closing attorney the unrecorded bond for title and made a similar false statement under oath to the closing attorney to induce her to issue title insurance without exception for the rights of the purchaser under the unrecorded bond for title.

12. The Debtors' false statements were made regarding the Debtors' or an insider's financial condition in that they concerned property of the Debtors' wholly owned company and the absence of encumbrances thereon.

13. The Debtors made the false statements, including the statement in the Mortgage, knowing the statements to be false and intending to deceive Lowcountry.

14. Lowcountry (now CBC) reasonably relied upon the statements by making the $234,000 loan secured in part by a Mortgage on the property which had already been sold by Debtors.

15. Further, during the term of the loan as extended from time to time, Debtors sold an additional part of the mortgaged property under another unrecorded bond for title without the knowledge or consent of the lender CBC, in violation of the terms of the Mortgage.

16. Debtors intentionally concealed the sale, intending to deceive CBC and to keep the proceeds from sale without applying them to reduction of the mortgage debt.

17. Debtors did so deceive CBC, and CBC extended the term of the loan from time to time, relying on the collateral which debtors had already sold without CBC's knowledge or consent.

18. After Debtors' default on the loan, CBC prosecuted a foreclosure action and obtained a deficiency judgment against Debtors in the amount of $135,000, Beaufort County Judgment Roll No. 2010-CP-07-01530, which judgment is the basis for Claim No. 7 in the amount of $143,902.61 filed by CBC in Debtors' Chapter 7 bankruptcy case.

19. CBC seeks, and upon information and belief is entitled to, a judgment and order of the Court under the authority of 11 U.S.C. § 523(a)(2)(A) determining and declaring that the debtors' liability to CBC and the judgment in favor of CBC, the subject of Claim No. 7, is not dischargeable and shall not be discharged by any general discharge of Debtors' liabilities on the grounds that the debt was incurred, and thereafter the credit extended and renewed, based on and as a result of false pretenses, the Debtors' false representations, and the Debtors' actual fraud.

## FOR A SECOND CAUSE OF ACTION
### [11 U.S.C. § 523(a)(2)(B)]

20. CBC repeats, realleges, and incorporates herein by reference the allegations of paragraphs 7 through 19 above.

21. CBC seeks, and upon information and belief is entitled to, the judgment and order of the court under the authority of 11 U.S.C. § 523(a)(2)(B) determining and declaring that debtors' liability to CBC and the judgment in favor of CBC, the subject of Claim No. 7, is not dischargeable and shall not be discharged by any general discharge of debtors' liabilities on the grounds that the loan was procured by debtors and made by CBC based on the materially false statement in writing respecting the debtors' or insider's financial condition, made by debtors with the intent to deceive CBC, on which CBC reasonably relied in making the loan and extending credit.

## FOR A THIRD CAUSE OF ACTION
### [11 U.S.C. § 727(a)(2)]

22. CBC repeats, realleges, and incorporates herein by reference the allegations of paragraphs 7 through 19, and 21, above.

23. The Debtors are now, and for many years prior to the filing of their petitions in this Court under Chapter 7, have been, engaged in the business of buying, rehabilitating or restoring, and then renting and selling residential real estate and in the business of developing a fun park.

24. The Debtors have operated their businesses under a succession of names or entities, including Rabon Enterprises, RABCO, LLC, Beaufort Fun Park, LLC, RealST8, LLC, and Harolds R Us, LLC.

25. In connection with their businesses and using the various names and entities, Debtors have engaged in a pattern of transferring, removing, destroying, and concealing property with intent to hinder delay and defraud their creditors in general, and CBC in particular, and the

most recent action of Debtors in furtherance of their plan and scheme was within one year prior to Debtors' filing of their petitions under Chapter 7.

26. The actions of Debtors intended to defraud CBC include, but are not limited to, the following:

    a. Even after they defaulted on their mortgage debt, the subject of Claim No. 7, debtors continued to receive payments from the purchaser under the second unrecorded bond for title, concealed the unrecorded bond for title and the payments, and failed to apply the payments to the mortgage debt due CBC.

    b. After the Debtors defaulted on the Beaufort Fun Park mortgage debt to CBC, the subject of Claim No. 9, and after CBC commenced its foreclosure action, Debtors, through their wholly-owned LLC, Beaufort Fun Park, LLC, without the knowledge or consent of CBC and in further breach of the mortgage, conveyed to debtor Scott A. Rabon's father, Earl Rabon, an easement encumbering a substantial part of the mortgaged property, thereby substantially diminishing the value of the mortgaged property and forcing CBC to prosecute a separate civil action to set aside the conveyance.

    c. Immediately after CBC gave Debtors and their company RABCO, LLC notice that CBC was going to commence foreclosure actions on various mortgage loans and seek deficiency judgments, Debtors formed a new LLC, RealST8, LLC, and thereafter began doing business through that LLC.

    d. Immediately after CBC obtained judgment in Jasper County against Debtors and RABCO, LLC, in July 2009, but before CBC could transcribe the judgment to Beaufort County, Debtors caused RABCO, LLC to transfer real estate it owned in Beaufort County to Debtors' new LLC, RealST8, LLC, for $1.00.

    e. In October 2011, shortly after CBC obtained the August, 2011, Beaufort County deficiency judgment against the Debtors and RABCO, LLC, the Debtors formed yet another LLC, Harolds R Us, LLC, having their children as the members, and since

that time, Debtors have been engaged in the same business but now operating through Harolds R Us, LLC, and claiming to be working for their children.

  f. In December, 2011, within days prior to their first Chapter 7 filing in late December, 2011, the Debtors caused their wholly owned LLC, RealST8, LLC, to convey Beaufort County real estate to Harolds R Us, LLC, without consideration.

  g. In May, 2010, the Debtors purchased a house, which the Debtors occupy as their principal residence, in the name of their son who was 18 or 19 years old at the time of purchase and who has no means to make payments on the $555,000 mortgage except for the Debtors' business being operated through Harolds R Us, LLC.

  h. Debtors have caused Harolds R Us, LLC to mortgage its properties for amounts substantially in excess of the values and purchase prices for the purpose of hindering, delaying, and defrauding their creditors in general and CBC in particular.

27. Upon information and belief, Debtors have operated their business in a manner and pattern intended to hinder, delay, and defraud their creditors in general, and CBC in particular, and the December, 2011, transfer of real estate by Debtors' LLC, RealST8, LLC to Harolds R Us, LLC for no consideration was made within one year prior to Debtors' filing, as part of that plan and scheme of Debtors, and with the intent of Debtors to transfer, remove, destroy and conceal their property to hinder, delay, and defraud CBC.

28. CBC seeks, and upon information and belief is entitled to, the judgment and order of the court under the authority of 11 U.S.C. § 727(a)(2) denying the Debtors' discharge.

### FOR A FOURTH CAUSE OF ACTION
### [11 U.S.C. § 727(a)(3)]

29. CBC repeats, realleges, and incorporates herein by reference the allegations of paragraphs 7 through 19, 21, and 23 through 27, above.

30. The Debtors and their businesses have had many millions of dollars pass through their hands, and despite requests to Debtors to produce records from which their financial condition and transactions can be ascertained, the records produced by Debtors are insufficient,

and upon information and belief, Debtors have concealed, destroyed, mutilated, or failed to keep or preserve recorded information, including books, documents, records, and papers, from which Debtors' financial condition and business transactions may be ascertained.

31. CBC seeks, and upon information and belief is entitled to, a judgment and order of the Court under the authority of 11 U.S.C. § 727(a)(3) denying the Debtors' discharge.

### FOR A FIFTH CAUSE OF ACTION
### [11 U.S.C. § 727(a)(4)]

32. CBC repeats, realleges, and incorporates herein by reference the allegations of paragraphs 7 through 19, 21, 23 through 27, and 30, above.

33. In stating under oath that their bankruptcy schedules and their statement of financial affairs are correct and complete, Debtors have knowingly and fraudulently in connection with the case made a false oath, in numerous particulars, including but not limited to the following:

    a. Debtors have failed to disclose their numerous business and real estate transactions including but not limited to their transfers within one year prior to filing.

    b. Debtors have failed to disclose their interest in Green Mountain, LLC, proceeds they received from an insurance claim, and other assets.

    c. Upon information and belief, Debtors' continuation of their business through a new LLC, which Debtors set up for their children, and claiming to be employed by their children, as well as Debtors' occupying as their residence a $555,000 house owned by their 19 or 20 year old son and claiming to pay him rent, is strictly a sham and scam being perpetrated by Debtors on the creditors and this Court.

34. CBC seeks, and upon information and belief is entitled to, a judgment and order of the Court under the authority of 11 U.S.C. § 727(a)(4), denying the Debtors' discharge.

## FOR A SIXTH CAUSE OF ACTION
### [11 U.S.C. § 727(a)(5)]

35. CBC repeats, realleges, and incorporates herein by reference the allegations of paragraphs 7 through 19, 21, 23 through 27, 30, and 33, above.

36. In failing to keep and maintain and failing to provide sufficient records showing in full the millions of dollars received by Debtors and their businesses and the disbursement of those funds, Debtors have failed to explain satisfactorily the loss of assets or deficiency of assets to meet Debtors' liabilities.

37. CBC seeks, and upon information and belief is entitled to, a judgment and order of the court under the authority of 11 U.S.C. 727(a)(5) denying the Debtors' discharge.

WHEREFORE CBC prays for the judgment and order of the court providing the following:

    a. determining and declaring that the debt owed by Debtors to CBC, the subject of Claim No. 7, is not dischargeable,

    b. denying Debtors' general discharge,

    c. providing to CBC such other and further relief as the court may find to be appropriate in the circumstances.

HAYNSWORTH SINKLER BOYD, P.A.

By:   s/Stanley H. McGuffin
      Stanley H. McGuffin, Fed ID No. 2833
Post Office Drawer 11889
Columbia, South Carolina 29211
(803) 779.3080 Tel
(803) 765.1243 Fax
smcguffin@hsblawfirm.com

- and-

Harold A. Boney, Fed ID No. 1380
P. O. Box 1151
Beaufort, SC 29901
(843) 524-0090
Attorneys for CBC National Bank

October 15, 2012

7/04
/13 pr
Log'r

BEAUFORT COUNTY SC - ROD
BK 01698 PG 1379
FILE NUM 2003004681
01/17/2003  02:51:16 PM
REC'D BY S SMITH RCPT# 113175
RECORDING FEES 13.00

This document was prepared by .................................................

HENRI ANN LOGAN
P. O. Box 1003
Beaufort, S. C. 29901

———— State of South Carolina ———— ———— Space Above This Line For Recording Data ————

# REAL ESTATE MORTGAGE
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage is ..January..16,..2003.......... and the parties and their addresses are as follows:

   MORTGAGOR: ..RABCO, LLC......................................................    Scott A. Rabon........................
   ..1812 Carolina Ave.............................................
   ..Beaufort, SC 29906-0000...................................

   ☐ Refer to the Addendum which is attached and incorporated herein for additional Mortgagors.

   LENDER:    ..Lowcountry National Bank...............................
              ..PO Box 1899, 36 Sea Island Pkwy.......................
              ..Beaufort, SC  29902............................................

2. **MORTGAGE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (hereafter defined), Mortgagor grants, bargains, conveys and mortgages to Lender the following described property:

   See attached legal description

   The property is located in ........BEAUFORT.................................... at ..........................................
                                        (County)
   ........................................, ....BEAUFORT........................., South Carolina ..29906-0000........
        (Address)                              (City)                                                  (ZIP Code)

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers, and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property"). The term Property also includes, but is not limited to, any and all water wells, water, ditches, reservoirs, reservoir sites and dams located on the real estate and all riparian and water rights associated with the Property, however established.

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount of the Secured Debt (hereafter defined) secured by this Mortgage at any one time shall not exceed $ ..........234,000.00............. . This limitation of amount does not include interest, loan charges, commitment fees, brokerage commissions, attorneys' fees and other charges validly made pursuant to this Mortgage and does not apply to advances (or interest accrued on such advances) made under the terms of this Mortgage to protect Lender's security and to perform any of the covenants contained in this Mortgage. Interest under the Note will be deferred, accrued or capitalized; however, Mortgagee shall not be required to defer, accrue or capitalize any interest except as provided in the Note. Future advances are contemplated and, along with other future obligations, are secured by this Mortgage even though all or part may not yet be advanced. Nothing in this Mortgage, however, shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment would need to be agreed to in a separate writing.

4. **SECURED DEBT DEFINED.** The term "Secured Debt" includes, but is not limited to, the following:
   A. The promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all extensions, renewals, modifications or substitutions (Evidence of Debt): ..A PROMISSORY NOTE IN THE AMOUNT.......
   ..OF $234,000.00 IN THE NAMES OF SCOTT A. RABON AND L. MICHELLE DEVLIN RABON........
   ..WITH A FINAL MATURITY DATE OF 04/16/2003.......................................................................
   .....................................................................................................................................................
       (e.g., borrower's name, note amount, interest rate, maturity date)

SOUTH CAROLINA - AGRICULTURAL/COMMERCIAL MORTGAGE (NOT FOR FNMA, FHLMC, FHA OR VA USE, AND NOT FOR CONSUMER PURPOSES)   (page 1 of 6)
©1994 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form AG/CO-MTG-SC  12/5/97

**EXHIBIT A**

Rabon - 089

B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Mortgage whether or not this Mortgage is specifically referred to in the evidence of debt.

C. All obligations Mortgagor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Mortgage, plus interest at the highest rate in effect, from time to time, as provided in the Evidence of Debt.

E. Mortgagor's performance under the terms of any instrument evidencing a debt by Mortgagor to Lender and any Mortgage securing, guarantying, or otherwise relating to the debt.

If more than one person signs this Mortgage as Mortgagor, each Mortgagor agrees that this Mortgage will secure all future advances and future obligations described above that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. This Mortgage will not secure any other debt if Lender fails, with respect to such other debt, to make any required disclosure about this Mortgage or if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Mortgagor agrees to make all payments on the Secured Debt when due and in accordance with the terms of the Evidence of Debt or this Mortgage.

6. **WARRANTY OF TITLE.** Mortgagor covenants that Mortgagor is lawfully seized of the estate conveyed by this Mortgage and has the right to grant, bargain, convey, sell, and mortgage the Property and warrants that the Property is unencumbered, except for encumbrances of record.

7. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Mortgage. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses which Mortgagor may have against parties who supply labor or materials to improve or maintain the Property.

8. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property and that may have priority over this Mortgage, Mortgagor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.
   C. Not to make or permit any modification or extension of, and not to request or accept any future advances under any note or agreement secured by, the other mortgage, deed of trust or security agreement unless Lender consents in writing.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of any lien, encumbrance, transfer, or sale, or contract for any of these on the Property. However, if the Property includes Mortgagor's residence, this section shall be subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. For the purposes of this section, the term "Property" also includes any interest to all or any part of the Property. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Mortgage is released.

10. **TRANSFER OF AN INTEREST IN THE MORTGAGOR.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if (1) a beneficial interest in Mortgagor is sold or transferred; (2) there is a change in either the identity or number of members of a partnership or similar entity; or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity. However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Mortgage.

11. **ENTITY WARRANTIES AND REPRESENTATIONS.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Mortgagor makes to Lender the following warranties and representations which shall be continuing as long as the Secured Debt remains outstanding:
   A. Mortgagor is an entity which is duly organized and validly existing in the Mortgagor's state of incorporation (or organization). Mortgagor is in good standing in all states in which Mortgagor transacts business. Mortgagor has the power and authority to own the Property and to carry on its business as now being conducted and, as applicable, is qualified to do so in each state in which Mortgagor operates.
   B. The execution, delivery and performance of this Mortgage by Mortgagor and the obligation evidenced by the Evidence of Debt are within the power of Mortgagor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.
   C. Other than disclosed in writing Mortgagor has not changed its name within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Mortgagor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

12. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will give Lender prompt notice of any loss or damage to the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor will not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restriction limiting or defining the uses which may be made of the Property or any part of the Property, without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor or any other owner made under law or regulation regarding use, ownership and occupancy of the Property. Mortgagor will comply with all legal requirements and restrictions, whether public or private, with respect to the use of the Property. Mortgagor also agrees that the nature of the occupancy and use will not change without Lender's prior written consent.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become

OR BK 01698 PAGE 1381

worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Mortgage. Mortgagor shall not partition or subdivide the Property without Lender's prior written consent. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

13. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any of Mortgagor's duties under this Mortgage, or any other mortgage, deed of trust, security agreement or other lien document that has priority over this Mortgage, Lender may, without notice, perform the duties or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may do whatever is necessary to protect Lender's security interest in the Property. This may include completing the construction.

Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Mortgage. Any amounts paid by Lender for insuring, preserving or otherwise protecting the Property and Lender's security interest will be due on demand and will bear interest from the date of the payment until paid in full at the interest rate in effect from time to time according to the terms of the Evidence of Debt.

14. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor grants, bargains, and conveys to Lender as additional security all the right, title and interest in and to any and all:
    A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases").
    B. Rents, issues and profits (all referred to as "Rents"), including but not limited to security deposits, minimum rent, percentage rent, additional rent, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Mortgagor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property.

Mortgagor will promptly provide Lender with true and correct copies of all existing and future Leases. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default. Except for one month's rent, Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lender's written consent. Upon default, Mortgagor will receive any Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds. Any amounts collected shall be applied at Lender's discretion to payments on the Secured Debt as therein provided, to costs of managing the Property, including, but not limited to, all taxes, assessments, insurance premiums, repairs, and commissions to rental agents, and to any other necessary related expenses including Lender's attorneys' fees and court costs.

Mortgagor agrees that this assignment is immediately effective between the parties to this assignment and effective as to third parties on the recording of this Mortgage. Mortgagor agrees that Lender is entitled to notify Mortgagor or Mortgagor's tenants to make payments of Rents due or to become due directly to Lender after such recording, however Lender agrees not to notify Mortgagor's tenants until Mortgagor defaults and Lender notifies Mortgagor of the default. Immediately after Lender gives Mortgagor the notice of default, Mortgagor agrees that either Lender or Mortgagor may immediately notify the tenants and demand that all future Rents be paid directly to Lender. On receiving the notice of default, Mortgagor will endorse and deliver to Lender any payments of Rent in Mortgagor's possession. If Mortgagor becomes subject to a voluntary or involuntary bankruptcy, then Mortgagor agrees that Lender is entitled to receive relief from the automatic stay in bankruptcy for the purpose of making this assignment effective and enforceable under state and federal law and within Mortgagor's bankruptcy proceedings.

Mortgagor warrants that no default exists under the Leases or any applicable landlord law. Mortgagor also warrants and agrees to maintain, and to require the tenants to comply with, the Leases and any applicable law. Mortgagor will promptly notify Lender of any noncompliance. If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance. Mortgagor will obtain Lender's written authorization before Mortgagor consents to sublet, modify, cancel, or otherwise alter the Leases, to accept the surrender of the Property covered by such Leases (unless the Leases so require), or to assign, compromise or encumber the Leases or any future Rents. Mortgagor will hold Lender harmless and indemnify Lender for any and all liability, loss or damage that Lender may incur as a consequence of the assignment under this section.

15. **CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

16. **DEFAULT.** Mortgagor will be in default if any of the following occur:
    A. Any party obligated on the Secured Debt fails to make payment when due;
    B. A breach of any term or covenant in this Mortgage, any prior mortgage or any construction loan agreement, security agreement or any other document evidencing, guarantying, securing or otherwise relating to the Secured Debt;
    C. The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Mortgagor or any person or entity obligated on the Secured Debt;
    D. The death, dissolution, or insolvency of, appointment of a receiver for, or application of any debtor relief law to, Mortgagor or any person or entity obligated on the Secured Debt;
    E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;
    F. A material adverse change in Mortgagor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or

© 1994 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form AG/CO-MTG-SC 12/9/97     *(page 3 of 6)*

OR BK 01696   PAGE 1382

G. Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

17. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure, mediation notices or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Mortgage in a manner provided by law if this Mortgagor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the Evidence of Debt, other evidences of debt, this Mortgage and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether expressly set forth or not. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

18. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Mortgage. Mortgagor will also pay on demand all of Lender's expenses incurred in collecting, insuring, preserving or protecting the Property or in any inventories, audits, inspections or other examination by Lender in respect to the Property. Mortgagor agrees to pay all costs and expenses incurred by Lender in enforcing or protecting Lender's rights and remedies under this Mortgage, including, but not limited to, attorneys' fees, court costs, and other legal expenses. Once the Secured Debt is fully and finally paid, Lender agrees to release this Mortgage and Mortgagor agrees to pay for any recordation costs. All such amounts are due on demand and will bear interest from the time of the advance at the highest rate in effect, from time to time, as provided in the Evidence of Debt and as permitted by law.

19. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) "Environmental Law" means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) "Hazardous Substance" means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law. Mortgagor represents, warrants and agrees that, except as previously disclosed and acknowledged in writing:
   A. No Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.
   B. Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.
   C. Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.
   D. Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.
   E. Mortgagor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.
   F. There are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.
   G. Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.
   H. Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law.
   I. Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.
   J. Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense.
   K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Mortgage and in return Mortgagor will provide Lender with collateral of at least equal value to the Property secured by this Mortgage without prejudice to any of Lender's rights under this Mortgage.

OR BK 0169o PAGE 1303

L. Notwithstanding any of the language contained in this Mortgage to the contrary, the terms of this section shall survive any foreclosure or satisfaction of this Mortgage regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

20. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any action, real or threatened, by private or public entities to purchase or take any or all of the Property, including any easements, through condemnation, eminent domain, or any other means. Mortgagor further agrees to notify Lender of any proceedings instituted for the establishment of any sewer, water, conservation, ditch, drainage, or other district relating to or binding upon the Property or any part of it. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims and to collect and receive all sums resulting from the action or claim. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Mortgage. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

21. **INSURANCE.** Mortgagor agrees to maintain insurance as follows:
    A. Mortgagor shall keep the Property insured against loss by fire, theft and other hazards and risks reasonably associated with the Property due to its type and location. Other hazards and risks may include, for example, coverage against loss due to floods or flooding. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Mortgage.

    All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "lender loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

    Unless Lender and Mortgagor otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Debt, whether or not then due, with any excess paid to Mortgagor. If Mortgagor abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Secured Debt whether or not then due. The 30-day period will begin when the notice is given.

    Unless Lender and Mortgagor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of scheduled payments or change the amount of the payments. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

    B. Mortgagor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property.

    C. Mortgagor agrees to maintain rental loss or business interruption insurance, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender.

22. **NO ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

23. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem necessary. Mortgagor warrants that all financial statements and information Mortgagor provides to Lender are, or will be, accurate, correct, and complete. Mortgagor agrees to sign, deliver, and file as Lender may reasonably request any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Mortgage and Lender's lien status on the Property. If Mortgagor fails to do so, Lender may sign, deliver, and file such documents or certificates in Mortgagor's name and Mortgagor hereby irrevocably appoints Lender or Lender's agent as attorney in fact to do the things necessary to comply with this section.

24. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Mortgage are joint and individual. If Mortgagor signs this Mortgage but does not sign the Evidence of Debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. Mortgagor agrees that Lender and any party to this Mortgage may extend, modify or make any change in the terms of this Mortgage or the Evidence of Debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Mortgage. The duties and benefits of this Mortgage shall bind and benefit the successors and assigns of Mortgagor and Lender.

    If this Mortgage secures a guaranty between Lender and Mortgagor and does not directly secure the obligation which is guarantied, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation including, but not limited to, anti-deficiency or one-action laws.

25. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Mortgage is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Mortgage is complete and fully integrated. This Mortgage may not be amended or modified by oral agreement. Any section or clause in this Mortgage, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section or clause of this Mortgage cannot be enforced according to its terms, that section or clause will be severed and will not affect the enforceability of the remainder of this Mortgage. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Mortgage are for convenience only and are not to be used to interpret or define the terms of this Mortgage. Time is of the essence in this Mortgage.

© 1994 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form AG/CO MTG-SC  12/5/97

(page 5 of 6)

OR BK 01690   PAGE 1384

26. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Mortgage, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

27. **WAIVER OF HOMESTEAD.** Except to the extent prohibited by law, Mortgagor waives all homestead exemption rights relating to the Property.

28. **U.C.C. PROVISIONS.** If checked, the following are applicable to, but do not limit, this Mortgage:
    - ☒ **Construction Loan.** This Mortgage secures an obligation incurred for the construction of an improvement on the Property.
    - ☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property.
    - ☐ **Crops; Timber; Minerals; Rents, Issues, and Profits.** Mortgagor grants to Lender a security interest in all crops, timber, and minerals located on the Property as well as all rents, issues, and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term "Property").
    - ☐ **Personal Property.** Mortgagor grants to Lender a security interest in all personal property located on or connected with the Property. This security interest includes all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Mortgagor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property. The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices.
    - ☐ **Filing As Financing Statement.** Mortgagor agrees and acknowledges that this Mortgage also suffices as a financing statement and as such, may be filed of record as a financing statement for purposes of Article 9 of the Uniform Commercial Code. A carbon, photographic, image or other reproduction of this Mortgage is sufficient as a financing statement.

29. **OTHER TERMS.** If checked, the following are applicable to this Mortgage:
    - ☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Mortgage will remain in effect until released.
    - ☐ **Waiver of Appraisal Rights.** The laws of South Carolina provide that in any real estate foreclosure proceeding a defendant against whom a personal judgment is taken or asked may, within thirty days after the sale of the mortgaged property, apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. THE UNDERSIGNED HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE MORTGAGED PROPERTY.
    - ☐ Additional Terms...........................................................................................................

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Mortgage and in any attachments. Mortgagor also acknowledges receipt of a copy of this Mortgage on the date stated above on Page 1.

☐ Actual authority was granted to the parties signing below by resolution signed and dated ...........................

Entity Name: RABCO LLC                                    Entity Name: ...........................

_____ 01/16/2003 (Seal)          _____ (Seal)
(Signature)                    (Date)          (Signature)                    (Date)
RABCO, LLC By: Scott A. Rabon, individually and     L. Michelle Devlin Rabon, Member
as member
Signed, Sealed and delivered in the presence of:

_____ (Witness)                          _____ (Witness)

☐ Refer to the Addendum which is attached and incorporated herein for additional Mortgagors, signatures and acknowledgments.

**PROBATE:**
STATE OF ...SOUTH CAROLINA..., COUNTY OF ...BEAUFORT... } ss.

Personally appeared before me the undersigned witness who, being duly sworn, deposed and said that (s)he saw the Mortgagor (and each Mortgagor if more than one) sign, seal and deliver the foregoing Mortgage and that (s)he, together with the other witness whose name appears as a witness, witnessed the execution thereof.

Sworn to and subscribed before me this ......16...... day

of ......January, 2003......

_____ (Seal)       _____
Notary Public for South Carolina

My commission expires: ......2/10/2009......

OR BK 01698 PAGE 1385

ALL that certain piece, parcel or lot of land, with improvements thereon, situate, lying and being on Port Royal Island, Beaufort County, South Carolina, shown and described as Lot 12 of Carolina Shores Subdivision on a plat prepared by Robert D. Trogdon, Jr., RLS, dated December 23, 1977, revised June 29, 1982 and recorded in the Office of the Register of Deeds for Beaufort County, South Carolina in Plat Book 25 at Page 68. For a more complete description of said property, reference may be had to an individual plat prepared by Robert D. Trogdon, IV, a copy of which is recorded in the said Beaufort County records in Book 836 at Page 2213.

This property is subject to those restrictions and covenants applicable to this property and recorded in the Office of the Register of Deed for Beaufort County, South Carolina.

This being a portion of the same property conveyed to the within named Mortgagors by Deeds recorded in the Office of the Register of Deeds for Beaufort County, South Carolina in Book 1255 at Page 589 and in Book 568 at Page 2256.

This instrument was prepared by Henri Ann Logan, Post Office Box 1008, Beaufort, S.C. 29901.

Beaufort County Tax Map Reference: 100-15A-14

*******

ALL that certain piece, parcel or tract of land, situate, lying and being on Port Royal Island, Beaufort County, South Carolina, and being a portion of the property shown and described as THE LANDS OF THE HEIRS OF G.W. SWEAT, located in SECTION 16, TOWNSHIP 1S RANGE 2W, according to the survey prepared by the United States Direct Tax Commission for the State of South Carolina, and being more particularly shown and described on a plat prepared by Arthur O. Christensen, RLS, dated December 10, 1935, and July 11, 1958. Said property herein conveyed is a 2 1/2 acre tract of land, being the Northern one-half (1/2) of the Southern one-half (1/2) of Lot 15, all as more clearly shown on the above referred to plat of record recorded in Deed Book 353 at Page 193 in the Register of Deeds Office for Beaufort County, South Carolina.

This is the same property conveyed to the within Mortgagor by deed recorded in the Beaufort County Records in Book 1083 at Page 1248.

This instrument was prepared in the Law Office of Henri Ann Logan, PO Box 1008, Beaufort, SC, 29901.

District 100; Map 31; Parcel 14

*******

ALL that certain piece, parcel or lot of land, with improvements thereon, situate, lying and being in Sheldon Township, Beaufort County, South Carolina, containing thirteen (13) acres, more or less, and the improvements thereon, being more particularly described and bounded as follows, to wit: Bounded on the North by lands now or formerly of of Ann Titus and Frances B. Thorne; on the East by the lands now or formerly of Isabel Williams; on the South by lands now or formerly of Ann Titus and on the West by lands now or formerly of G. M. Priester.

This being the same property conveyed to the within named Mortgagor by Deed recorded in Book 1284 at Page 2538.

This instrument was prepared by Henri Ann Logan, Post Office Box 1008, Beaufort, S.C. 29901.

Beaufort County Tax Map Reference: 700-13-16